UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD LEE WHITTEN | CIVIL ACTION |
| VERSUS | NUMBER: 20-1778 |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | SECTION: "E" (5) |

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the Parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 10, 11).[1/]

Ronald Lee Whitten, *pro se* Plaintiff herein, filed the subject applications for DIB and SSI benefits on February 13 and April 9, 2018, respectively, alleging disability as of July 1, 2015 or December 31, 2016, respectively. (Tr. pp. 239-240, 241-246).[2/] In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as blindness or low vision, spinal stenosis, a reconstructed right leg, and severe depression. (Tr. p. 280). Plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process on September 27, 2018. (Tr. pp. 134-135, 136-137). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge

---

[1/] Plaintiff's cross-motion is actually an affidavit.

[2/] A review of a "Disability Report-Field Office" form that appears in the administrative record below reveals that Plaintiff had previously filed numerous other applications for Social Security benefits, all of which had been denied at one or the other levels of the administrative review process. (Tr. pp. 275-277). The administrative record also contains the Appeals Council and Administrative Law Judge's denials of Whitten's most recent of those previous applications for benefits. (Tr. pp. 171-174, 152-170).

("ALJ") went forward on September 16, 2019 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 181-183, 184-185, 81-133). On October 2, 2019, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 8-26). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on May 8, 2020, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-7). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1382(c)(3).

In his affidavit/cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

1. alj refused evidence multiple times when it was out of claimants control that they werent turned in earlier. i gave my lawyer over 100 pages of mri's, ct scans, surgery reports etc. within 5 days of trial he tells me that they got stuck in the brown envelope i gave him. out of my control. also, one of my doctors refused to give records to me. exhibits 1 and 2.

2. alj did not give any weight at all to any of my medical evidence because of one note from a doctor i was seeing for the 1st time. page 7 of his decision. there is no evidence to support it at all. he completely ignored every law and rule. i also asked nurse about note, she said it is a typo, everyone gets same note. i explained to him exactly what note was for. exhibits 3,4,5.

(Rec. doc. 10, p. 1).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since December 31, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, and dysfunction of the upper extremity (right hand) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant requires a cane for ambulation. He is able to frequently handle and finger with the right upper extremity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 8, 1974 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. pp. 14, 15, 16, 18, 19).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record

supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1970).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act.  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.  *Harrell*, 862 F.2d at

475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made;

5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner finds that the individual can perform other work, the burden then shifts back to the

claimant to rebut that finding.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

Plaintiff's first challenge to the Commissioner's decision is that the ALJ refused to admit certain evidence into the administrative record as untimely when it was out of Plaintiff's control that the evidence was not submitted earlier.  More specifically, Plaintiff alleges that he gave his attorney over 100 pages of medical records in the form of MRIs, CT scans, and surgical reports and that, within five days of the administrative hearing that was held in this matter, his attorney advised him that the records had gotten stuck in the brown envelope in which they had been transmitted and were thus not timely submitted.  Plaintiff also alleges that one of his healthcare providers refused to provide him with records that could have been offered to be admitted into evidence in the proceedings below.

At the outset of his written decision of October 2, 2019, the ALJ addressed the issue of the consideration of untimely-submitted evidence as follows:

> If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).  Pursuant to 20 CFR 404.935(b) and 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrate Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented [him from] submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.
>
> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date.  The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met.  After the hearing, the claimant's representative

6

uploaded late evidence. The undersigned finds no good cause for the late evidence and declines to admit it. The claimant's representative also submitted a request to submit late evidence based on an MRI referral. Ex. D30F. The undersigned denies this request, as it is for a record that was not yet in existence, and the record had not even been ordered. Finally, the claimant's representative requested that the undersigned subpoena records from a provider. Ex. D12E.[3/] The undersigned denies this request, as it is untimely and based on insufficient grounds.

(Tr. pp. 11-12).

Plaintiff first alleges that over 100 pages of medical records that he provided to his attorney were not timely-submitted to the SSA because they got "stuck" in the envelope in which they were provided to counsel. Plaintiff does not elaborate on the contents of this documentation nor does he cite those portions of the record where the documentation may be found as he is obligated to do under Rule 56(c)(1)(A), Fed. R. Civ. P. *See*, e.g., *Taylor v. Colvin*, No. 15-CV-3418, 2016 WL 6683530 at *6 (E.D. La. Jul. 26, 2016), *adopted*, 2016 WL 6680402 (E.D. La. Nov. 14, 2016).[4/] That omission notwithstanding, a review of the administrative record reveals approximately 49 pages of materials filed therein which were not assigned exhibit numbers (tr. pp. 32-80), presumably the "uploaded late evidence" referred to by the ALJ in his written decision. Those materials range from radiographic studies going back to May 27, 2007 to MRI test results from 2015 to treatment records from 2017 to a fax transmittal sheet from counsel's office dated August 22, 2019. (*Id.*). To the extent that Plaintiff complains that a portion of this documentary evidence was not timely submitted to SSA because it was not properly extricated from the

---

[3/] This is obviously a typographical error as the exhibit identified as D12E in the proceedings below is a form that Plaintiff completed on August 16, 2018 in which he acknowledged that he would be attending an evaluation with a consultative psychologist on August 23, 2018. (Tr. p. 30). Plaintiff failed to keep that appointment. (Tr. pp. 148-149). Exhibit D21E, on the other hand, is a letter from Plaintiff's attorney to the ALJ in which counsel asked that certain records be subpoenaed. (Tr. p. 342).

[4/] Although *pro se* pleadings are liberally construed, the requirements of Rule 56 still apply. *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Johnson v. Luckett*, No. 14-CV-083, 2016 WL 1091876 at *3 (S.D. Miss. Mar. 21, 2016), *appeal dis'd*, 2017 WL 4857472 (5th Cir. Jun. 29, 2017).

envelope in which it was provided to his attorney, the Court begins with the well-established principle that civil litigants, although they may not always be satisfied with the actions of their attorneys, are generally bound by those actions and cannot avoid the acts or omissions of their freely-selected agents. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390 (1972); *Cooper v. Lewis*, 644 F.2d 1077, 1082 (5th Cir. Unit A 1981); *United States v. State of Texas*, 523 F.Supp. 703, 711 (E.D. Tex. 1981). In addition, a claimant has no constitutional right to counsel in a Social Security proceeding, *Cornett v. Astrue*, 261 Fed.Appx. 644, 651 (5th Cir. 2008), and claims of ineffective assistance of counsel are not cognizable in civil actions like this one. *Russell on Behalf of Russell*, 62 F.3d 1421, 1995 SL 472681 at *2 (8th Cir. 1995) (table); *Payne v. Astrue*, No. 11-CV-1544, 2012 WL 1090054 at *6 (E.D. La. Feb. 27, 2012), *adopted*, 2012 WL 1089959 (E.D. La. Mar. 30, 2012). Moreover, "'[a] social security claimant who was represented by counsel of his choosing cannot at a later date complain that the representation was inadequate.'" *Diggs v. Astrue*, No. 10-CV-2537, 2011 WL 2447509 at *16-17 (D. N.J. Jun. 14, 2021), *aff'd*, 454 Fed.Appx. 880 (3rd Cir. 2011) (quoting *Dowd v. Commissioner of Social Security*, No. 08-CV-1272, 2009 WL 2246153 at *6 (W.D. Pa. Jul. 26, 2009)). More pertinent to the matter at hand, counsel's mistakes or lack of diligence do not qualify as exceptions to the five-day rule of §§404.935(b) and 416.1435(b) that was properly cited by the ALJ[5] as the tasks of

---

[5] In full, §404.935 reads as follows:

> **§404.935 Submitting written evidence to an administrative law judge.**
> (a) When you submit your request for hearing, you should also submit information or evidence as required by §404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in §404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this

8

obtaining and submitting medical records are matters that <u>are</u> considered to be within the control of the claimant and his attorney. *Odis v. Saul*, No. 20-CV-0311, 2020 WL 8713688 at *3-4 (D. Minn. Nov. 30, 2020), *adopted*, 2021 WL 568456 (D. Minn. Feb. 16, 2021). *See also Warner v. Saul*, No. 19-CV-0019, 2020 WL 5524822 at *8-9 (W.D. Va. Jul. 16, 2020); *Bartley v. Saul*, No. 18-CV-0023, 2019 WL 6709538 at *7-8 (W.D. Va. Oct. 25, 2019), *adopted*, 2019 WL 6702554 (W.D. Va. Dec. 19, 2019). Because the circumstances described by Plaintiff do not meet any of the exceptions enumerated in §§404.935(b) and 416.1435(b), the ALJ did not err in declining to admit the evidence in question.

The second piece of evidence that the ALJ declined to consider was the results of an MRI Plaintiff had been referred to undergo shortly before the administrative hearing (tr. p. 529) but which had not even been scheduled by the time the hearing went forward. (Tr. pp. 89-91). The ALJ's treatment of this request was clearly correct. Sections 404.935(a) and 416.1435(a) require a claimant to "… inform us about or submit any <u>written</u> <u>evidence</u>

---

requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.
(b) If you have evidence required under §404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
(1) Our action misled you;
(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
 (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
 (ii) There was a death or serious illness in your immediate family;
 (iii) Important records were destroyed or damaged by fire or other accidental cause; or
 (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

Title 20 C.F.R. §416.1435, the counterpart to §404.935 in the SSI context, is similarly worded.

… no later than five business days before the date of the scheduled hearing." (Emphasis added). Here, no medical evidence, *i.e.*, MRI test results, existed five days before the hearing or even on the date of the hearing itself. The mere fact that Plaintiff had been referred to undergo an MRI was not "written evidence" any more than the fact of the referral, in and of itself and without any accompanying results, would be evidence that "… relates to whether or not [plaintiff was] disabled" as described in 20 C.F.R. §§404.1512(a) and 416.912(a). *See Curtis v. Saul*, No. 19-CV-1322, 2020 WL 6710568 at *3 (D. Ore. Nov. 16, 2020). Indeed, even at this late date the Court is unaware whether the MRI was ever even performed. The ALJ's handling of this request was proper.

Although not specifically complained of by Plaintiff in his affidavit/cross-motion, the third set of records that the ALJ declined to consider were those that Plaintiff's counsel requested from a local healthcare provider on August 22, 2019 but were apparently not immediately forthcoming after a dispute apparently arose over copying costs for the records. (Tr. pp. 32, 86-89). Plaintiff's counsel advised the ALJ of the dispute via a "Request for Subpoena of Records" on September 9, 2019, approximately seven days before the administrative hearing. (Tr. p. 342). The ALJ denied that request on September 10, 2019 as untimely and because the subpoena request was unaccompanied by any documentation of attempts to obtain the evidence sooner. (Tr. p. 343). Two attempts to notify counsel of the denial of the subpoena request were unsuccessful. (*Id.*). The records in question, which cover the time period of January 19 to November 28, 2017 and total 36 pages in length, appear to have been downloaded by Plaintiff's counsel after the administrative hearing. (Tr. pp. 45-80).

A claimant who wishes to "... subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge ... at least 10 business days before the hearing date." 20 C.F.R. §§404.950(d)(2), 416.1450(d)(2). The request must, *inter alia*, state the important facts that the witnesses or documents would be expected to prove and indicate why the facts could not be proven without issuing a subpoena. *Id.* If the claimant misses the deadline for a subpoena request, and if the ALJ has not yet issued a decision, the ALJ may deny the request at his or her discretion unless the circumstances in §§404.935(b) and 416.1435(b) apply. As noted earlier, those circumstances include: (1) an action of the SSA that misled the claimant; (2) a physical, mental, educational, or linguistic limitation that prevented the claimant from informing the SSA about or submitting the evidence earlier; or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control that prevented the claimant from informing the SSA about or submitting the evidence earlier.

Here, because Plaintiff's subpoena request was not made at least 10 days before the administrative hearing, it was untimely. 20 C.F.R. §§404.950(d)(2), 416.1450(d)(2). The subpoena request also did not comply with the Regulation because it did not identify the important facts that the documents were expected to prove or explain why they could not have been proven without issuing a subpoena. *See Boasso v. Berryhill*, No. 18-CV-5623, 2019 WL 3526711 at *5 (E.D. La. Mar. 14, 2019), *adopted in part and rejected in part*, 2019 WL 3526532 (E.D. La. May 30, 2019). The records in question all pre-date the administrative hearing by approximately two years but were apparently not sought by Plaintiff's counsel until just one month before the hearing. Plaintiff's subpoena request also failed to describe the good faith, diligent efforts that he took to obtain the records in a

11

timely fashion. *Ward v. Commissioner of Social Security*, No. 18-CV-1529, 2019 WL 5168659 at *5 (M.D. Fla. Oct. 15, 2019). Because Plaintiff's subpoena request was untimely and did not comply with the requirements of §§404.950(d)(2) and 416.1450(d)(2), and because his circumstances did not meet any of the conditions in §§404.935(b) and 416.1435(b), the ALJ did not abuse his discretion in denying the request. *Ward*, 2019 WL 5168659 at *5; *Boasso*, 2019 WL 3527611 at *5.

Plaintiff's second challenge to the Commissioner's decision is that the ALJ failed to give any weight to the opinions of his treating physicians but instead deferred to the opinions of the SSA's consultative examiner, Dr. Christopher Ogelsby, who examined him on only one occasion, without evidentiary support and contrary to controlling law. Plaintiff also complains of the weight that the ALJ gave to a note that was generated by one of his treating physicians, Dr. Sudhanva Wadgaonkar.

The SSA revised its Regulations in 2017, to govern all claims filed on or after March 27, 2017, such that ALJs are no longer required to "... defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1420c(a), 416.920c(a). These newly-promulgated Regulations eliminate the longstanding "treating-physician rule," which formerly required the ALJ to give a treating physician's opinions "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). Under the new Regulations, the supportability and consistency of medical opinions are "the most important factors" to be considered when evaluating the persuasiveness of those opinions, reserving to the ALJ, if he or she so chooses, the option to explain how he or she considered the following

12

additional factors: (1) the medical source's relationship with the claimant, including the length of the relationship and the frequency of examinations; (2) the medical source's area of specialization; and (3) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§404.1520c(a)-(c), 416.920c(a)-(c). The ALJ must articulate how persuasive he or she finds each of the opinions in the record. 20 C.F.R. §§404.1520c(b), 416.920c(b). *See Brown v. Saul*, No. 19-CV-0835, 2020 WL 8099510 at *2 (S.D. Miss. Dec. 29, 2020), *adopted*, 2021 WL 107212 (S.D. Miss. Jan. 12, 2021); *Garcia v. Saul*, No. 19-CV-1307, 2020 WL 7417380 at *4 (W.D. Tex. Dec. 18, 2020).

In assessing Plaintiff's residual functional capacity to work, the ALJ relied upon the opinions and findings of Dr. Oglesby, who found that Plaintiff had various physical limitations due to degenerative disc disease and that he would benefit from the use of a cane for balancing and walking on uneven surfaces. (Tr. pp. 16-17).[6] The ALJ went on to note that Dr. Oglesby's recommendation with respect to the use of an assistive device was supported by and consistent with the opinions of one of Plaintiff's treating physicians, Dr. Andre Tilton, who would later prescribe a walking cane and a rollator for Plaintiff himself. (Tr. p. 17). Other physical limitations resulting from degenerative disc disease that were endorsed by Dr. Oglesby were found by the ALJ to be supported by and consistent with the findings of Dr. Tilton and another one of Plaintiff's treating physicians, Dr. Mark Labat. (*Id.*). The same is true with respect to the functional imitations related to Plaintiff's right upper extremity that were assessed by the ALJ. (*Id.*). Thus, contrary to Plaintiff's present

---

[6] At the consultative evaluation conducted on August 21, 2018, Plaintiff advised Dr. Oglesby that he had participated in pain management for eight years and had treated at Urgent Care of Slidell until 2017 when he ran out of funds. (Tr. p. 435). However, the records from Urgent Care of Metairie that were submitted by his attorney reflect that Plaintiff was treated there for pain management from January 19, 2017 until November 28, 2017 when he was terminated after testing positive for three non-prescribed drugs. (Tr. pp. 45-80).

13

assertion, the limitations that were assessed by the ALJ based on Dr. Oglesby's findings were actually consistent with and supported by the opinions of Plaintiff's own treating physicians, Drs. Labat and Tilton. After making his residual functional capacity assessment, the ALJ properly cited the language of §§404.1520c(a) and 416.920c(a) relative to the weight to be afforded to prior administrative medical findings and medical opinions. (*Id.*).

The ALJ, on the other hand, identified certain pieces of evidence and the opinions expressed therein as unpersuasive because they lacked objective support. (*Id.*). One such piece of evidence was a "To Whom It May Concern" note that was authored by Dr. Wadgaonkar on March 18, 2019 in which he simply recalled seeing Plaintiff on that date and remarked that "[h]e should not return to work until further notice … [and would be] reassessed in 2 weeks." (Tr. pp. 445). At the administrative hearing on September 16, 2019, the ALJ questioned Plaintiff on the circumstances surrounding the creation of the note. (Tr. pp. 101-102). In response to the ALJ's inquiries, Plaintiff explained that the note was written at his request in an effort to avoid imprisonment if he was unable to make weekly $100 payments on a bond that had been imposed following his arrest on a marijuana charge. (*Id.*). The opinions of physicians, typically treating physicians, that are captured on "To Whom It May Concern" letters or similar checklist type forms, particularly when unaccompanied by any contemporaneously-recorded, medically acceptable findings, are entitled to little weight on that basis alone, *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980), and the use of these checklist forms is generally viewed with disfavor when the forms are not adequately supported by any narrative citations to clinical findings. *Rodrigue v. Colvin*, No. 13-CV-1814, 2014 WL 2993423 at *15 (E.D. La. July 2, 2014)(Berrigan, J.); *Brown v. Astrue*, No. 11-CV-2919, 2013 WL 620269 at *6 (E.D. La. Jan. 18, 2013), *adopted*,

14

2013 WL 619177 (E.D. La. Feb. 19, 2013)(Lemmon, J.); *Haynes v. Astrue*, No. 11-CV-2289, 2012 WL 3860467 at *15-16 (E.D. La. July 23, 2012); *adopted*, 2012 WL 3863171 (E.D. La. Sept. 5, 2012)(Feldman, J.), *aff'd*, 519 Fed.Appx. 258 (5th Cir. 2013)(and cases cited therein); *Morris v. Astrue*, No. 08-CV-4105, 2010 WL 497748 at *10 (E.D. La. Feb. 1, 2010)(Lemmon, J.). Even in the wake of the 2017 amendments to the Regulations, the principles articulated in the foregoing opinions remain instructive. *Garcia*, 2020 WL 7417380 at *4.

Also found to be unpersuasive for similar reasons was a "To whom it may concern" note authored by Dr. Tilton on December 3, 2016 in which he opined that Plaintiff was "… physically unable to do manual labor" and in which he recommended that Plaintiff be "… medically excused from manual labor, and community service." (Tr. pp. 17, 487). Finally, the ALJ noted in his written decision that the state agency medical consultant was unable to offer an opinion on Plaintiff's condition because of insufficient evidence after Plaintiff failed to attend multiple consultative evaluations. (Tr. p. 18 (citing tr. pp. 145-151, 300-301); tr. pp. 432, 433). Without the benefit of Plaintiff's full cooperation, the ALJ properly weighed the evidence that was before him and made the credibility determinations that are entrusted to him in the first instance. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). The ALJ properly evaluated the body of the evidence before him, including the opinions of the various doctors who treated and evaluated Plaintiff.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[7]

New Orleans, Louisiana, this 20th day of May, 2021.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[7] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.