UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD LEE WHITTEN                                CIVIL ACTION

VERSUS                                            NUMBER: 20-1778

ANDREW SAUL,                                      SECTION: "E"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## ORDER AND REASONS

Before the Court is a Report and Recommendation issued by Magistrate Judge Michael North.[1] On December 10, 2020, Plaintiff filed a motion for summary judgment.[2] On January 5, 2021, Defendant Andrew Saul, Acting Commissioner of the Social Security Administration ("the Commissioner") filed a cross motion for summary judgment.[3] On May 20, 2021, the Magistrate Judge issued his Report and Recommendation.[4] On June 3, 2021, Plaintiff filed objections to the Report and Recommendation.[5]

Having considered the motions, the record, the applicable law, the Magistrate Judge's Report and Recommendation, and the Plaintiff's objections to the Magistrate Judge's Report and Recommendation, the Court hereby adopts the Magistrate Judge's Report and Recommendation, and adopts it as its own. Accordingly, the Court **DENIES** the motion for summary judgment filed by Plaintiff and **GRANTS** the motion for summary judgment filed by the Commissioner.

---

[1] R. Doc. 12. This Order refers to documents on this Court's CM/ECF docket as "R. Doc. [#]" and refers to the administrative record as "Tr. [#]." The administrative record is located on the CM/ECF docket as Document 8.
[2] R. Doc. 10. Plaintiff is now pro se. Plaintiff filed his own affidavit, with portions of the administrative law judge's opinion and portions of his testimony at the hearing attached. The Court treats the affidavit as a motion for summary judgment.
[3] R. Doc. 11.
[4] R. Doc. 12.
[5] R. Doc. 13. Plaintiff's objection is in the form of an affidavit.

1

**BACKGROUND**

Plaintiff Ronald Whitten seeks judicial review, pursuant to 42 U.S.C. § 205(g) of the Social Security Act, of the final decision of the Commissioner denying his claims for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").[6]

On February 7, 2018, Plaintiff applied for DIB and SSI benefits based on disability.[7] In his applications for benefits, Plaintiff alleged a disability onset date of July 1, 2015, (DIB application)[8] and December 31, 2016 (SSI application).[9] Plaintiff alleged the following disabilities: blind or low vision; spinal stenosis; reconstructed right leg; and severe depression.[10] The Commissioner initially denied both the DIB and SSI applications on September 27, 2018, informing Plaintiff there was "insufficient evidence in [the] file to show that you are disabled."[11]

On December 6, 2018, Plaintiff filed a written request for a hearing.[12] A hearing was held on September 16, 2019.[13] Plaintiff and an impartial vocational expert testified at the hearing.[14] On October 2, 2019, the administrative law judge ("ALJ") issued a written decision denying Plaintiff's applications.[15] The ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged disability onset date

---

[6] *See* 42 U.S.C. §§ 423 *et seq* (Title II); *id* §§ 1381 *et seq*. (Title XVI).
[7] Tr. at p. 11. The ALJ's decision states the applications were both filed on February 7, 2018. The administrative record reflects Plaintiff's DIB application was completed on February 13, 3018, and his SSI application was submitted on April 9, 2018. *Id.* at p. 239-246. The precise dates of applications are not material for purposes of this Order.
[8] *Id.* at p. 239–240.
[9] *Id.*
[10] *Id.* at p. 280.
[11] *Id.* at p. 175–176, 178–179.
[12] *Id.* at p. 181, 184.
[13] *See id.* at p. 82.
[14] *Id.* at p. 94–132.
[15] *Id.* at p. 8–20.

through the date of the ALJ's decision.[16] Plaintiff appealed to the Appeals Council which denied review on May 8, 2020.[17] The ALJ's decision thus became the final decision of the Commissioner.

On June 19, 2020, Plaintiff filed the instant complaint in this Court, seeking review of the Commissioner's final decision denying his applications for Title II and Title XVI benefits based on disability.[18] On November 4, 2020, the Commissioner answered[19] and filed the administrative record.[20] The parties filed cross motions for summary judgment.[21] On May 20, 2021, the Magistrate issued a Report and Recommendation, affirming the decision of the ALJ in all respects.[22] On June 3, 2021, Plaintiff filed objections.[23]

## **LEGAL STANDARD**

In reviewing the Magistrate Judge's Report and Recommendations, the Court must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected.[24] The Court needs only to review the portions of the report to which there are no objections to determine whether they are clearly erroneous or contrary to law.[25]

The Court's function on review of a decision of the Commissioner is limited to determining whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the correct legal standard.[26] A finding of no

---

[16] *Id.*
[17] *Id.* at p. 1
[18] R. Doc. 1.
[19] R. Doc. 2.
[20] *See* R. Doc. 7.
[21] R. Doc. 10; R. Doc. 11.
[22] R. Doc. 12.
[23] R. Doc. 13.
[24] 28 U.S.C. § 636(b).
[25] *Id.*
[26] *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

3

substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.[27] Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[28] The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner.[29]

## LAW AND ANALYSIS

An SSI or DIB claimant bears the burden of proving that he suffers from a disability.[30] "The law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]."[31] A person suffers from a disability, as defined in the Act, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[32] If a claimant carries his initial burden of proving that he is disabled, the burden shifts to the Commissioner to establish that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.[33]

In determining whether the claimant suffers from a "disability," as defined in the Act, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

---

[27] *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).
[28] *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).
[29] *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[30] *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).
[31] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)
[32] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
[33] *Harrell*, 862 F.2d at 475.

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made;

5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.[34]

At steps one through four, if the Commissioner determines the claimant is or is not disabled (depending on the step), the ultimate decision regarding disability is reached, and there is no need to proceed to the next step.[35] If, however, the Commissioner makes it to step five without conclusively determining whether the claimant is disabled or not, the Commissioner must "show that the claimant can perform other substantial work in the national economy," for a finding of not disabled to be appropriate.[36]

In this case, the ALJ made it to step five and found, "[c]onsidering the claimant's age, education, work experience, and residual function capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."[37] The ALJ, therefore, found the Plaintiff not disabled, and denied his applications for benefits under Titles II and XVI.[38] The Magistrate Judge advises the Court to affirm the opinion

---

[34] *See* 20 C.F.R. §§404.1520(a)(4) and 416.920(a)(4).
[35] *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).
[36] *See* 20 C.F.R. §§404.1520(g) and 416.920(g).
[37] Tr. at p. 18.
[38] *Id.* at p. 19.

of the ALJ by granting the Commissioner's cross motion for summary judgment and denying the Plaintiff's cross motion for summary judgment.

In his Affidavit stating his objections, Plaintiff first points to the second paragraph of the first page of the ALJ's decision,[39] and objects that "alj refuses to admit late evidence multiple times even though it wasnt in my control. Late evidence would clearly change alj's mind to approve my disability."[40]

Plaintiff next states that "Judge clearly ignored the law by not giving my medical evidence any deciding weight at all. Clearly stated that alj thinks i still work, so he denied disability due to 1 dr typo note stating i cant work."[41] In his cross motion for summary judgment, Plaintiff argued

> alj did not give any weight at all to any of my medical evidence because of one note from a doctor i was seeing for the 1st time. page 7 of his decision. there is no evidence to support it at all. he completely ignored every law and rule. i also asked nurse about note, she said it is a typo, everyone gets same note. i explained to him exactly what note was for. exhibits 3,4,5.

Plaintiff's first objection to the Magistrate's Report and Recommendations and to the Commissioner's decision arises out of the ALJ's refusal to admit into the record certain late-filed evidence. In his decision denying Plaintiff's applications, the ALJ addressed the late evidence issue as follows:

> If the claimant wishes that written evidence be considered at the hearing, then the claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 404.935(a) and 416.1435(a)). Pursuant to 20 CFR 404.935(b) and 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrate Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational,

---

[39] R. Doc. 13-1 at p. 1. *See* Tr. at p. 11.
[40] R. Doc. 13.
[41] R. Doc. 13.

6

or linguistic limitation(s) that prevented [him from] submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met. After the hearing, the claimant's representative uploaded late evidence. The undersigned finds no good cause for the late evidence and declines to admit it. The claimant's representative also submitted a request to submit late evidence based on an MRI referral. Ex. D30F. The undersigned denies this request, as it is for a record that was not yet in existence, and the record had not even been ordered. Finally, the claimant's representative requested that the undersigned subpoena records from a provider. [Ex. D21E.] The undersigned denies this request, as it is untimely and based on insufficient grounds.

Neither party disputes the fact that the excluded medical records were in fact untimely submitted. Relying on the exception applicable when circumstances beyond the claimant's control cause the evidence to be submitted late, Plaintiff objects that "alj refuses to admit late evidence multiple times even though it wasnt in my control. Late evidence would clearly change alj's mind to approve my disability."[42] Therefore, the issue is whether the ALJ applied the correct legal standards in deciding to exclude late-filed evidence even though Plaintiff argues he showed good cause for the late filings.

Three different categories of medical records were excluded by the ALJ because they were filed late, including: (1) "over 100 pages of mri's, ct scans, reports etc.," Plaintiff gave to his lawyer that were "stuck in the brown envelope,";[43] (2) records from an MRI that did not occur until after (if at all) the September 16, 2019, hearing; and (3) medical records submitted late because "one of [Plaintiff's] doctors refused to give records to

---

[42] R. Doc. 13.
[43] R. Doc. 10 at p. 1.

7

[him]," which were also the subject of a denied subpoena request.[44] Each category of excluded medical records will be taken in turn.

### *Records stuck in Brown Envelope.*

Plaintiff argues the ALJ erroneously refused to admit the "over 100 pages" of medical records that got "stuck in the brown envelope," because it was beyond Plaintiff's control that the records were not timely submitted.[45] Plaintiff states that he gave these documents to his lawyer in a brown envelope within sufficient time prior to the hearing, however, the lawyer failed to submit them on time.[46] Plaintiff argues that the failings of his lawyer are circumstances "beyond his control."[47]

The three exceptions to the five-day rule of 20 C.F.R. §§ 404.935(a) and 416.1435(a) under which late-submitted evidence will be admitted are: (1) an action of the SSA misleads the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation; or (3) some other circumstance beyond the claimant's control prevented the claimant from submitting or informing the ALJ of the evidence in a timely manner.[48] Mistakes by a party's own lawyer are not listed in the regulations as exceptions to the five-day rule.[49] Plaintiff is bound by the actions of his lawyer,[50] and Plaintiff cannot complain about ineffective assistance of counsel in this Social Security proceeding.[51] "A social security claimant who was represented by counsel of his own choosing cannot at a

---

[44] *Id.*
[45] R. Doc. 10.
[46] *Id.*
[47] *Id.*
[48] *See* 20 C.F.R. §§ 404.935(b) and 416.1435(b).
[49] *See id.*
[50] *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962); *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 240 (5th Cir. 2010).
[51] *Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008) (rejecting a social security claimant's ineffective assistance of counsel claim and noting that "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings").

later time complain that the representation was inadequate."[52] Thus, the fact that the evidence was submitted late due to the error of Plaintiff's lawyer avails Plaintiff of nothing. Lawyer error is not an exception to the five-day rule listed in the Code of Federal Regulations.[53]

20 C.F.R. §§ 404.935(a) and 416.1435(a) demand that "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence . . . no later than 5 business days before the date of the scheduled hearing."[54] By failing to extricate the medical records from the brown envelope and deliver them to the ALJ in a timely fashion, Plaintiff's counsel did not make every effort to submit the evidence within the period required by the 5-day rule.

While the Plaintiff argues the ALJ's decision would have been different had this excluded evidence been admitted, Plaintiff makes no attempt to prove why that is so.[55] "As a party moving for summary judgment, Rule 56(c)(1)(A) requires Plaintiff to cite to those specific portions of the record that support his position."[56] Plaintiff does not even attempt to explain what these medical records which were "stuck in the brown envelope" contain, how they support his position in this Court, or where in the record such medical records might be found. The Court has no basis on which to evaluate Plaintiff's assertion that the "[l]ate evidence would clearly change alj's mind to approve my disability."[57]

---

[52] *Diggs v. Astrue*, No. 10-CV-2537, 2011 WL 2447509 at *16-17 (D. N.J. Jun. 14, 2021), aff'd, 454 F. App'x. 880 (3rd Cir. 2011).
[53] *See* 20 C.F.R. §§ 404.935(b) and 416.1435(b).
[54] *Id.* §§ 404.935(a) and 416.1435(a).
[55] R. Doc. 13.
[56] *Taylor v. Colvin*, No. 15-CV-3418, 2016 WL 6683530 at *6 (E.D. La. Jul. 26, 2016), adopted, 2016 WL 6680402 (E.D. La. Nov. 14, 2016).
[57] R. Doc. 13.

The ALJ did not err in declining to admit those medical records which were "stuck in the brown envelope."

*Records from the MRIs.*

At the hearing, the ALJ questioned Plaintiff's lawyer about "the five-day request for the . . . future MRI."[58] In his decision, the ALJ rejected the "request to submit late evidence based on an MRI referral," because the request is for "a record that was not yet in existence, and the record had not yet even been ordered."[59] The magistrate judge approved the ALJ's decision with regards to the MRI request because the request was for future records, and the five-day rule of 20 C.F.R. §§ 404.935(a) and 416.1435(a) permits only the submission of existing, written evidence.[60]

Shortly before the September 16, 2019, hearing, Plaintiff was referred to a specialist for an MRI.[61] The MRI had not been scheduled, much less actually conducted, by the date of the September 16 hearing, and Plaintiff has submitted no proof that the MRI was ever conducted. It follows that Plaintiff could not submit the results of the MRI five business days before the hearing because the records did not even exist at that time. The ALJ did not err in refusing to "admit" this evidence.

In *Curtis F. v. Saul*, written evidence of claimant's treatment with one of his doctors was unavailable five business days before the hearing because claimant's appointment with the doctor was scheduled for a date after the hearing.[62] The court pointed out that 20 C.F.R. § 404.935(a) requires a claimant to submit "written evidence" within 5 business days before the hearing, and that the mere fact that a claimant has an

---

[58] Tr. at p. 89.
[59] R. Doc. 8-2, at p. 12.
[60] *See* 20 C.F.R. §§ 404.935(a) and 416.1435(a).
[61] *See* Tr. at p. 89–91.
[62] No. 19-CV-1322, 2020 WL 6710568, at *3 (D. Ore. Nov. 16, 2020).

10

appointment in the future is not "written evidence" that "relates to whether or not [claimant was] disabled."⁶³

The Court finds the analysis in *Curtis F* is fully applicable to the Plaintiff's MRI results. 20 C.F.R. §§ 404.935(a) and 416.1435(a) speak of "written evidence" and MRI results to be created at some unknown, future date do not constitute such "written evidence."⁶⁴ The fact that Plaintiff was referred prior to the date of the hearing to undergo an MRI at some future time does not transform the later-created MRI results into written evidence that was in existence and submitted to the ALJ within five days before the hearing date as required under 20 C.F.R. §§ 404.935(a) and 416.1435(a).⁶⁵ Nor is the fact that Plaintiff was referred to undergo an MRI "evidence known to [Plaintiff] that relates to whether or not [Plaintiff is] blind or disabled."⁶⁶ This is particularly true when Plaintiff's own lawyer testified at the hearing that the MRI would only be conducted if it could be submitted into the administrative record.⁶⁷ The ALJ did not err with regards to the MRI results.

### *The medical records that were the subject of a denied subpoena request.*

Finally, certain medical records from Urgent Care of Metarie were not included in the administrative record. These records were the subject of a dispute between Plaintiff's counsel and Urgent Care of Metarie over copying costs.⁶⁸ Plaintiff's counsel sought a subpoena request from the ALJ for these records, but the request was denied by the ALJ as being untimely and based on insufficient grounds.⁶⁹ These records were in fact

---

⁶³ *Id.* (quoting 20 C.F.R. 4041512(a)).
⁶⁴ 20 C.F.R. §§ 404.935(a) and 416.1435(a).
⁶⁵ *See id.*
⁶⁶ *Id.*
⁶⁷ Tr. at p. 90–91.
⁶⁸ *See id.*
⁶⁹ Tr. at p. 12.

11

obtained by Plaintiff and his counsel on Friday, September 13, 2019, only one business day before the September 16, 2018 hearing date. Therefore, they could not have been submitted within the time period specified under the five-day rule of 20 C.F.R. §§ 404.935(a) and 416.1435(a).[70] Further, these records were generated at least two years before the hearing but Plaintiff's counsel did not make an attempt to obtain them until less than a month before the hearing.[71]

> The subpoena request, submitted to the ALJ on September 9, 2019, states
>
> Please be advised that my client, Ronald Whitten, has a hearing scheduled for September 16, 2019 at 8:30 am. We are request that this client's records from Urgent Care Metarie be subpoenaed. Our office spoke with Brandy with Urgent Care Metarie and she stated that they don't do electronic records; there, it does not apply. As a result, of them not honoring the HITECH Act or Louisiana law, we are requesting that Mr. Whitten's records from them be subpoenaed.[72]

The ALJ addressed the subpoena request at the outset of the hearing.[73] The ALJ denied the subpoena request because "it was late, [and an alleged violation of the HITECH Act is] not grounds for a subpoena."[74] Additionally, the ALJ cited Plaintiff's counsel's failure to include the specific provisions of Louisiana law which were alleged to be violated by Urgent Care of Metarie.[75] The ALJ's refusal to grant the subpoena request was consistent with applicable law, and supported by substantial evidence.

With regards to subpoenaing evidence for a hearing before the ALJ, 20 C.F.R. §§ 404.950(d)(2) and416.1450(d)(2) provide

> Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 10 business days before the hearing

---

[70] 20 C.F.R. §§ 404.935(a) and 416.1435(a).
[71] *See id.* at p. 45–80.
[72] *Id.* at p. 342.
[73] *Id.* at p. 86–7.
[74] *Id.* at p. 87.
[75] *Id.* at p. 88.

12

date, unless you show that your circumstances meet the conditions described in § 404.935(b). The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.[76]

First, the September 9, 2019, date included on the subpoena request proves it was submitted to the ALJ fewer than ten days before the September 16 hearing.[77] The subpoena request fails to "describe the document with sufficient detail to find them" and fails to "indicate why these facts could not be proven without issuing a subpoena."[78] Plaintiff's counsel suggests in the request that the subpoena was necessary because Urgent Care of Metarie was violating "the HITECH ACT or Louisiana Law."[79] The only specific provision of law cited by Plaintiff's counsel in the subpoena request was the HITECH Act, which the ALJ explained did not apply.[80] The subpoena request alleged that the medical provider "violated Louisiana law," however, no provision of Louisiana law that was allegedly violated was identified in the subpoena request. Therefore, the ALJ found that insufficient evidence was submitted in support of the request for the subpoena. Because Plaintiff's subpoena request was untimely and did not comply with the requirements of §§404.950(d)(2) and 416.1450(d)(2), and because Plaintiff's circumstances did not meet any of the conditions in §§404.935(b) and 416.1435(b), the ALJ did not abuse his discretion in denying the request.[81]

---

[76] 20 C.F.R. §§ 404.950(d)(2) and 416.1450(d)(2).
[77] Tr. at p. 342.
[78] *See Boasso v. Berryhill*, No. 18-CV-5623, 2019 WL 3526711 at *5 (E.D. La. Mar. 14, 2019), *adopted in part and rejected in part*, 2019 WL 3526532 (E.D. La. May 30, 2019).
[79] *Id.*
[80] Tr. a p. 87–8.
[81] *Ward*, 2019 WL 5168659 at *5; *Boasso*, 2019 WL 3527611 at *5.

With regards to Plaintiff's second objection, relating to the weighting of the medical evidence, Plaintiff complains the ALJ gave too much weight to the opinion of the SSA's consultative examiner, Dr. Chrispher Oglesby, and did not give enough weight to the opinions of Plaintiff's own physicians. Plaintiff also complains about the weight the ALJ gave to a note providing by Dr. Wadgaonkar.

The SSA revised its Regulations in 2017, to govern all claims filed on or after March 27, 2017, such that ALJs are no longer required to "... defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[82] Under these new regulations, the ALJ is no longer required to give controlling weight to a treating physician's opinion.[83] The supportability and consistency of medical opinions are "the most important factors" to be considered when evaluating the persuasiveness of those opinions, reserving to the ALJ, if he or she so chooses, the option to explain how he or she considered (1) the medical source's relationship with the claimant, including the length of the relationship and the frequency of examinations; (2) the medical source's area of specialization; and (3) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.[84]

Two notes provided by Plaintiff, from Dr. Wadgaonkar and Dr. Tilton, were not given any weight by the ALJ. In his decision, with regards to these notes, the ALJ explains

> The record contains a March 2019 note by Sudhanva Wadgaonkar, M.D., who said the claimant 'should not return to work until further notice.' Ex. D11F/2. This opinion is unpersuasive because it contain no diagnosis or objective medical evidence to support it.

---

[82] 20 C.F.R. §§404.1420c(a), 416.920c(a).
[83] *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2).
[84] 20 C.F.R. §§404.1520c(a)-(c), 416.920c(a)-(c).

> . . .
>
> The record contains another note, dated December 3, 2016, from Dr. Tilton. Ex. 20F. In it, Dr.Tilton states that the claimant is under his care and has been diagnosed with DDD, chronic back pain, and polyarthralgia. Dr. Tilton said the claimant 'is physically unable to do manual labor' and recommended the claimant be 'medically excused from manual labor[] and community service.' The undersigned finds this note unpersuasive. It is unclear to whom and for what purpose this letter was written, and it contains no objective medical evidence to support it.[85]

Because both of these notes were not supported by an objective medical evidence and are instead conclusory statements regarding the claimant's ability to work, the ALJ properly exercised his discretion in deciding to give them no weight. At the hearing, Plaintiff himself explained that one of these notes was generated only to avoid going back to prison for failure to make weekly payments.[86] Further, the state agency medical consultant did not offer an opinion because Plaintiff repeatedly failed to show up for his scheduled appointments.[87]

As pointed out by Plaintiff, the ALJ did give weight to the opinion of Dr. Oglesby in assessing Plaintiff's residual functional capacity to work.[88] The ALJ relied upon Dr. Oglesby's medical opinion that Plaintiff suffered from Degenerative Disk Disease and would benefit from a cane for walking.[89] But the Plaintiff is wrong in stating that the ALJ only considered the medical opinion of Dr. Oglesby because the ALJ specifically noted that Dr. Oglesby's recommendation regarding a walking cane was consistent with the medical opinion from Plaintiff's doctor, Dr. Tilton.[90] The medical opinions endorsed by Dr. Oglesby with regards to plaintiff's right upper extremity and other physical limitations

---

[85] Tr. at p. 17.
[86] *Id.* at 101–02.
[87] *Id.*
[88] *Id.* at p. 16–17.
[89] *Id.* at p. 17.
[90] *Id.* at p. 17.

resulting from degenerative disc and joint disease were found by the ALJ to be consistent with the findings of Dr. Tilton and Dr. Labat.

The Court finds that the ALJ properly weighed and evaluated the medical evidence before him and made the credibility determinations that are entrusted to him in the first place.[91]

The Court, having considered the record, the applicable law, relevant filings, and the Magistrate Judge's Report and Recommendation finds the Magistrate Judge's findings of fact and conclusions of law are correct and hereby approves the United States Magistrate Judge's Report and Recommendation and **ADOPTS** it as its opinion in this matter.[92]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment[93] is **DENIED**, that Defendant's motion for summary judgment[94] is **GRANTED**, and that judgment is granted in favor of Defendant and against Plaintiff.

**New Orleans, Louisiana, this 6th day of July, 2021.**

*Susie Morgan*
SUSIE MORGAN
UNITED STATES DISTRICT JUDGE

---

[91] *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir. 1990).
[92] R. Doc. 12.
[93] R. Doc. 10.
[94] R. Doc. 11.